UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| JEFFBOAT LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 4:06-cv-134-WGH-JDT |
| | ) | |
| GENERAL DRIVERS, WAREHOUSEMEN & | ) | |
| HELPERS LOCAL UNION NO. 89, | ) | |
| | ) | |
| Defendant. | ) | |

## ENTRY ON DEFENDANTS' MOTION
## FOR SUMMARY JUDGMENT

### Introduction

This matter is before the Honorable William G. Hussmann, Jr., United States Magistrate Judge, on Defendant's Motion for Summary Judgment filed July 16, 2007. (Docket Nos. 30-31).[1] Plaintiff filed its Response and Exhibits to Response on August 16 and 17, 2007, respectively. (Docket Nos. 32-33). Defendant has filed no reply brief.

### Background

Defendant, General Drivers, Warehousemen & Helpers Local Union No. 89 ("Local 89"), as a labor organization, represents certain employees who work for

---

[1]In their Amended Case Management Plan filed December 20, 2006, the parties consented to Magistrate Judge jurisdiction in this case. (Docket No. 19). District Judge John Daniel Tinder entered an Order of Reference on January 4, 2007. (Docket No. 21).

Plaintiff, Jeffboat LLC ("Jeffboat"). (Complaint ¶ 5). The parties entered into a Collective Bargaining Agreement that was in effect from July 4, 2002, until April 1, 2007. (Complaint ¶ 6, Ex. 1 [hereinafter "Collective Bargaining Agreement"]). Article III of the Collective Bargaining Agreement specifically reserves certain rights to Jeffboat's management. It provides:

> Subject to the terms of this Agreement, the Company reserves the right of directing the working force, including the right to hire, classify, assign, suspend, promote, demote and discharge for proper cause or to transfer, and the right to release employees from duty because of lack of work or for any legitimate reason or any other condition of employment not specifically provided for in the Agreement, is vested exclusively in the Company. *The justness of the demotion, suspension or discharge of an employee covered by the Agreement shall be subject to the grievance procedure.*

(Collective Bargaining Agreement at 3 (emphasis added)).

The Collective Bargaining Agreement lists 15 "intolerable offenses" which are punishable by a "[s]uspension pending disciplinary action up to and including discharge."[2] (*Id.* at 81-82). On October 17, 2005, Jeffboat employee (and Local 89 member) Robert Lee Garrett ("Garrett") was discharged with Jeffboat's stated reason being that Garrett violated Jeffboat's policy regarding the use of "threatening and abusive" language in violation of the fourth listed intolerable offense. (Complaint ¶ 11).

Article VIII of the Collective Bargaining Agreement sets forth the mandatory grievance/arbitration procedures for the resolution of any issues "pertaining to the interpretation and application" of the agreement. (Complaint

---

[2]This list is not considered all inclusive.

¶ 7).  After proceeding through several preliminary steps, if the parties are unable to come to an agreeable conclusion to the grievance, Local 89 may demand arbitration.  (Collective Bargaining Agreement at 11).  Article VIII unambiguously states:

> The arbitrator shall have no power to add to, subtract from, change or modify any provision of the Agreement, but *is authorized only to interpret the existing provision of the Agreement and to apply them to the specific facts of the dispute.*"

(Collective Bargaining Agreement at 12 (emphasis added)).

Local 89, on behalf of Garrett, submitted a grievance protesting Garrett's discharge that was accepted and processed by Jeffboat.  (Complaint ¶ 12).  Both Jeffboat and Local 89 selected Arbitrator Jerry B. Sellman to preside over the arbitration hearing; no procedural defects were alleged by either party, and the hearing took place on June 1, 2006.  At the hearing, the parties stipulated that the matter was properly before the Arbitrator.  (Complaint ¶ 13, Ex. 2 [hereinafter "August 7, 2006 Arbitrator's Opinion"]).  According to the Arbitrator, the parties further stipulated that the issue was whether Jeffboat had "just cause" to discharge Garrett on October 17, 2005.  (August 7, 2006 Arbitrator's Opinion).  At the hearing, Jeffboat presented two witnesses in support of its case:  Stacey Barry and Kendall Dale Miller.[3]  (*Id.*)  Local 89 presented no witnesses, and Garrett did not testify.  (*Id.*)

---

[3]Both witnesses testified under oath.

On August 7, 2006, the Arbitrator issued an award sustaining the grievance. (Complaint ¶ 14). The award describes the episode that led to the discharge of Garrett as follows:

> On October 14, 2005, the Grievant arrived at work wearing a shirt that had the words "Jeffboat Inmate" printed on the back. A bargaining unit employee noticed the language on the shirt and notified the Employer's Director of Human Resources . . . . Because employees complained that the shirt was offensive, the Director of Human Resources contacted the Grievant's supervisor and asked him to go to the warehouse and obtain a leather jacket for the Grievant. The Supervisor retrieved a "lightweight green jacket" and drove to the area where the Grievant was working. He offered the jacket to the Grievant, but the Grievant did not want to wear it. The Supervisor testified that when he gave the jacket to the Grievant, the Grievant said, "This jacket is gonna be too damn hot; do you care if I go down to my locker and put my shirt on – I got an extra shirt – and put it on?"
>
> The Supervisor assented to the request. In the course of the Grievant walking to his locker, his Supervisor drove up in a company truck and asked him if he wanted a ride. He responded by opening the passenger door to enter. The Supervisor testified that when the Grievant grabbed the door handle he started "hollering." The Grievant said, in a loud voice, "What the hell is Stacey (the Director of Human Relations) gonna come up with next? Somethin' about me a shavin' my head?" When he stepped one foot in the truck the Supervisor recalled saying to the Grievant, "You're not gettin[ ]' in my truck screamin['] and hollerin[']." At that point the Grievant got out of the truck.
>
> Despite the Grievant's conduct, the Supervisor waited for the Grievant outside the area where he changed into his extra shirt. When the Grievant emerged, he simply retrieved his bag from the smoking area and walked past the Supervisor without speaking to him. According to the Supervisor, the Grievant was heading toward the exit, which was less than one hundred feet from the Supervisor, who was in his truck. As he passed his Supervisor, the Supervisor stated that he heard him remark "F–k Jeffboat" and he continued

>to walk outside the gate. The Grievant was on the Employer's
>property when he uttered that profanity.

(August 7, 2006 Arbitrator's Opinion at 5-6).

The Arbitrator's opinion stated that: "Based on an examination of the facts in this proceeding . . ., it is the Arbitrator's opinion that the Employer did not have just cause to terminate the employment of the Grievant . . . ." (*Id.* at 12). The opinion went on to explain that "[i]t is undisputed that the Grievant was angry and used profane language. At issue is whether the language used was threatening or abusive. If it was not, the Rule was not violated." (*Id.* at 13). The Arbitrator concluded by finding that the language used by Garrett was not threatening or abusive based in part on the testimony of Kendall Dale Miller who stated at the arbitration hearing that he did not find the language abusive or threatening. (*Id.* at 14-15). The Arbitrator determined that "[t]he use of profane language cannot be threatening or abusive, if it is not directed at someone or does not offend the party overhearing it." (*Id.* at 14). The Arbitrator, therefore, found that Garrett did not violate the specific rule prohibiting threatening or abusive language, and that just cause did not exist to terminate Garrett. (*Id.* at 14-15).

Jeffboat filed its Complaint alleging that the Arbitrator went beyond his duty to interpret the Collective Bargaining Agreement and that pursuant to Section 301 of the Labor Management Relations Act, the Court should vacate the Arbitrator's award. In its Motion for Summary Judgment, Local 89 argues that

the Arbitrator simply interpreted the Collective Bargaining Agreement's prohibition against "threatening and abusive language," and that the Arbitrator's award must be upheld.

## Summary Judgment Standard

Summary judgment must be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The motion should be granted so long as no rational fact finder could return a verdict in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). Thus, a court's ruling on a motion for summary judgment is akin to that of a directed verdict, as the question essentially for the court in both is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. When ruling on the motion, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences therefrom in that party's favor. *Id.* at 255. If the nonmoving party bears the burden of proof on an issue at trial, that party "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e); *see also Silk v. City of Chicago,* 194 F.3d 788, 798 (7th Cir. 1999). Lastly, the moving party need not positively disprove the nonmovant's case;

rather, it may prevail by establishing the lack of evidentiary support for that case. See *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986).

## Analysis

Local 89 moved for summary judgment in this case, requesting that the Court dismiss Jeffboat's claim because there are no grounds for vacating the Arbitrator's award. Judicial review of an arbitrator's award made pursuant to a collective bargaining agreement is extremely limited. *Northern Indiana Public Service Co. v. United Steelworkers of America, AFL-CIO-CLC,* 243 F.3d 345, 346 (7th Cir. 2001). "[A]n arbitrator's award is legitimate 'so long as it draws its essence from the collective bargaining agreement.'" *Dexter Axle Co. v. International Association of Machinists & Aerospace Workers, Dist. 90, Lodge 1315,* 418 F.3d 762, 768-69 (7th Cir. 2005) (quoting *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597 (1960). An arbitrator's award will be vacated only in the event that the arbitrator's opinion manifests an infidelity to this obligation. *Enterprise Wheel,* 363 U.S. at 597.[4] In expanding upon *Enterprise Wheel,* the Seventh Circuit asks "whether the arbitrator [has] exceeded the powers delegated to him by the parties." *Ethyl Corp. v. United Steelworkers of America, AFL-CIO-CLC,* 768 F.2d 180, 184 (7th Cir. 1985). Furthermore, as the Seventh Circuit explained in *Dexter Axle*:

---

[4] An arbitrator's award will also generally not be vacated because of errors of law or fact. *Moseley, Hallgarten, Estabrook & Weeden, Inc. v. Ellis,* 849 F.2d 264, 272 (7th Cir. 1988).

> It is abundantly clear that it is the arbitrator who is behind the driver's wheel of interpretation, not the court. Great deference is paid to an arbitrator's construction and interpretation of an agreement. It is elementary that the question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for and the courts have no business overruling him because their interpretation of the contract is different. It is only when the arbitrator must have based his award on some body of thought, or feeling, or policy, or law that is outside the contract (and not incorporated in it by reference) that the award can be said not to draw its essence from the CBA. Thus, we will vacate only if there is no possible interpretive route to the award. Significantly, we resolve any reasonable doubt about whether an award draws its essence from the CBA in favor of enforcing the award.

*Dexter Axle Co.,* 418 F.3d at 768 (internal quotation marks and citations omitted).

In the case at bar, Jeffboat terminated Garrett with the only stated rationale being that Garrett used "threatening and abusive language." However, the Collective Bargaining Agreement provides no definition outlining what constitutes threatening and abusive language. By failing to provide such a definition, the parties determined that it would be left to an arbitrator to interpret these terms. And, in this instance, the Arbitrator determined that the language used by Garrett was not threatening and abusive because: (a) it was not directed at some person; and (b) the only person that did hear it was not threatened or abused by the particular language Garrett used.

While there are certainly several other different interpretations of what constitutes threatening and abusive language that the Arbitrator could have adopted, it is not the Court's place to determine whether the Arbitrator's

interpretation was the best possible interpretation.  So long as the Arbitrator's interpretation was a possible interpretation, the Arbitrator's award must be upheld.  Because the Arbitrator was merely interpreting the Collective Bargaining Agreement, and because the interpretation was not unreasonable, his decision "draws its essence from" the Collective Bargaining Agreement.

Jeffboat argues that the Arbitrator's award was in error because the Arbitrator did not merely interpret the Collective Bargaining Agreement, but instead added additional terms to it.[5]  Specifically, Jeffboat found fault in the Arbitrator's reference to other arbitrators' decisions which included a common theme, that language was threatening and abusive when it was directed at someone.  Jeffboat argues that by focusing on other arbitrators' decisions, the Arbitrator "based his award on some body of thought, or feeling, or policy, or law that is outside the contract." *Dexter Axle Co.,* 418 F.3d at 768.  However, the Court notes that "[w]hen an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem." *Enterprise Wheel,* 363 U.S. at 597.

In examining Garrett's language in this case, the Arbitrator was presented with a Collective Bargaining Agreement that prohibited threatening and abusive

---

[5]Jeffboat also argues that the Arbitrator improperly engaged in his "own brand of industrial justice."  The Arbitrator clearly determined, however, that the language Garrett used was not threatening and abusive.  Had the Arbitrator determined that the language was threatening and abusive but not warranting a termination, he would have been in error.  Instead, he simply interpreted undefined terms within the Collective Bargaining Agreement, which was well within his authority to do.

language but provided absolutely no explanation of what the words "threatening and abusive" meant. Given the absence of such a definition, the Arbitrator had no other choice but to draw his definition from some other source besides the Collective Bargaining Agreement. This is precisely what the Arbitrator did. By reflecting upon other arbitrators' characterizations of what constitutes threatening and abusive language, the Arbitrator was simply bringing his own informed judgment to bear on the facts of Garrett's situation. Nothing about the Arbitrator's actions was improper, and his award must be upheld.[6]

## Conclusion

For the reasons outlined above, Defendant Local 89's Motion for Summary Judgment is **GRANTED.** Plaintiff Jeffboat's Complaint requesting that the Court vacate the Arbitrator's award for Robert Lee Garrett is **DISMISSED**.

**SO ORDERED.**

**Dated:** October 12, 2007

_____
WILLIAM G. HUSSMANN, JR.
Magistrate Judge

---

[6] In its Motion for Summary Judgment, Local 89 also moved for remand to the Arbitrator so that he could consider attorney's fees and calculate the amount of back pay to be awarded. However, Local 89 has provided no binding authority to support an award of attorney's fees, and the Collective Bargaining Agreement unambiguously states that the parties "agree that they shall jointly and equally bear the expense of the service of the arbitrator." (Collective Bargaining Agreement at 12). Additionally, the Arbitrator already rendered his opinion which included a back pay component. Local 89 provides no support for its contention that it is the Arbitrator's duty to calculate the exact amount of back pay to be awarded. For these reasons, the Court concludes that remand is unwarranted.

**Electronic copies to:**

David S. Birnbaum
JONES DAY
dbirnbaum@jonesday.com

Robert M. Colone
FAITH LAW OFFICE
rmcolone@hotmail.com

Lawrence Charles DiNardo
JONES DAY
lcdinardo@jonesday.com

Brent D. Knight
JONES DAY
bdknight@jonesday.com